McBride, judge.
Plaintiff prosecutes this appeal from a judgment dismissing his suit against Acme Fast Freight, Inc., a common carrier, in which he is seeking to recover the sum of $589.48, representing the alleged damage to merchandise while it was being transported from Chicago, Illinois, to plaintiff’s place of business in the City of New Orleans.
The facts are that plaintiff purchased from Debutante Frocks of Chicago certain dry goods, and on November 14, 1945, that concern shipped a portion thereof, valued at $1,178.96, to plaintiff via defendant’s freight line. The shipment was f. o. b. Chicago, and defendant billed plaintiff for the freight charges. Plaintiff claims that when the merchandise was delivered to him in New Orleans by defendant on November 20, 1945, it was in a damaged state, and that “petitioner determined the salvage value of the goods by allowing a fifty per cent (50%) depreciation on the merchandise *867 which was water stained,” and that he is entitled to recover the amount sued for from defendant. The evidence shows that the shipment consisted of 13 cases, 5 cartons, and 13 bundles of dry goods. The damaged merchandise was contained in 3 bundles, 2 boxes, and 3 cartons. A memorandum on the reverse of the freight bill, made by defendant’s agent in New Orleans before the merchandise was delivered to plaintiff, shows that the said bundles, boxes, and cartons' had been re-coopered, and that the contents thereof were exposed and soiled.
The petition alleges that the shipment was delivered to the defendant in good condition, and that it was damaged during the course of transportation. This is denied by defendant.
Plaintiff, himself, was the only witness who testified in the case. He frankly stated that he had no knowledge whatsoever as to the condition of the merchandise when it was delivered to the carrier in 'Chicago. It is conceded by his counsel that plaintiff was unable to produce the bill of lading evidencing the shipment, because it had been either lost or misplaced. At the time that plaintiff lodged his claim with the defendant, defendant required of him a bond of indemnity running in its favor, which evidences the fact that plaintiff could not produce the original bill of lading. A copy of the bond of indemnity, offered in evidence on the trial, is contained in the record.
The failure of plaintiff to make proof that the carrier received the merchandise from the shipper in good condition is fatal to his case.
Under the Interstate Commerce Act, § 20, paragraph (11), as amended, 49 U.S.C. A. § 20(11), the delivering carrier under an interstate contract of affreightment or through bill of lading is liable for goods damaged in transit by it or any of the common carriers to which such property may be delivered or over whose line such property may pass. The liability of the carrier in such cases is for the full actual loss, damage, or injury to the property at the place of destination at the time delivery of the goods should have been made.
In order for the consignee to malee out a prima facie case against the carrier for damage to goods sustained in transit, it is necessary for him, under the principle so well established, to allege and prove (1), receipt of the goods by the carrier in good order and condition, (2) that the shipment arrived at its destination in a damaged condition, and (3) the amount of the loss. Bancroft v. Yazoo & M. V. R. Co., 194 La. 115, 193 So. 481; L. Frank & Co. v. Illinois Cent. R. R. Co., La.App., 43 So.2d 88; Colotra v. Railway Express Agency, La.App., 32 So.2d 69; Arwady v. Texas & N. O. R. Co., La.App., 18 So.2d 339. See also 9 Am.Jr., Carriers, §§ 834-835.
Counsel for plaintiff argue that the presumption arises that the merchandise was in good condition when shipped, from the fact of the receipt of the goods by the carrier ' without objection or exception noted in its bill of lading or shipping receipt to the effect that the merchandise was otherwise than in good condition. We are cited to 13 C.J.S., 'Carriers, § 254(d), pp. 538-539,'reading:
“No presumption exists that the goods were in good condition when' delivered to the carrier. The presumption arises, however, from the fact of the receipt of the goods by the carrier without objection or exception noted in the bill of lading or shipping receipt, that as far as the condition was apparent on ordinary inspection the goods were in good condition. * * *■
“ * * * If the damage to goods by water was apparent from exterior inspection on their arrival at destination, the carrier’s failure to note the condition when receiving the goods, raises the presumption that the condition did not then exist. The burden is on the carrier to show that goods open to inspection were in bad condition when received by it. Where there is proof that the goods were damaged in transit, the burden is on the carrier to show that they were in bad condition at the time of shipment. * * * ”
The argument proceeds on the premise that it was incumbent upon the carrier to issue a bill of lading, couched in terms fixed by the Interstate Commerce Commis *868 sion, which contracts are made uniform throughout the United States in interstate shipments, and which uniform bill of lading is to be implied herein as the contract of shipment.
Counsel take the position that in the absence of the defendant’s production of a copy of the bill of lading showing no exceptions noted therein, the implication results that there were none, and that the merchandise was in good order and condition when accepted for transportation by the defendant.
We cannot agree with counsel that the burden rested upon defendant to produce its copy of the bill of lading. The law provides what must be proved by a consignee to make out a prima facie case against the carrier. Among other things, plaintiff carried the burden of showing to the court that when the merchandise was delivered to the Acme Fast Freight, Inc., in Chicago, the shipment was in an undamaged condition. The only evidence which plaintiff adduced regarding the condition of the merchandise is his statement that .when the shipment reached him in New Orleans it was in a damaged condition as a result of having become wet.
It seems to us that if plaintiff’s demands are valid, he could have made out his case, notwithstanding the loss or mislaying of the bill of lading, by introducing other available evidence going to show the sound condition of the merchandise when delivered to the carrier. For instance, he might have proved that fact, if true, by obtaining the evidence of the consignor. If it was plaintiff’s choice to rely upon the bill of lading, means are provided by law whereby he might have secured the carrier’s copy thereof; or he might have proved the recitals of the document by parol, after laying the proper foundation.
Plaintiff’s testimony is silent so far as any mention of the bill of lading is concerned. He was content to submit his case on a showing that the shipment indicated that it had been damaged by water before delivery to him from defendant’s truck. He now seeks to throw upon the defendant the burden of proving that the merchandise was not in such damaged condition when received for shipment, notwithstanding that the law clearly imposes that burden upon him. We have not been cited to any authority, and our own research reveals none, holding that it is the duty of the defendant carrier to establish that the shipment was not in good order when received, in the absence of any affirmative proof emanating from plaintiff that the merchandise was in good order and condition when accepted by the carrier for shipment.
 Plaintiff also contends that whereas there is no objection or exception noted on the freight bill indicating that the property was in a damaged condition when received by the carrier, it should be assumed, in the absence of such notation on the freight bill, that the merchandise must necessarily have been in good condition. We do not think that because there was no notation on the bill for the carriage charges that such circumstance in any way militates against the defendant in this case, as we know of no provisions of law which make it mandatory for the carrier to note the condition of the shipment on the freight bill. We are unwilling to imply, solely because no such notation was made, that the merchandise, when received by the carrier, was in any condition other than that in which it was at the time of delivery in New Orleans.
In view of our holding, we find it unnecessary to pass upon the defense that plaintiff did not fix and establish the amount of his damages in the proper manner.
A supplemental answer filed by defendant alleges that after defendant received the shipment in Chicago it contracted with the Illinois Central Railroad Company for transportation of the goods to’ New Orleans, and the Illinois Central Railroad Company is called in warranty by the defendant. We likewise deem it unnecessary for us to pass upon this incidental demand.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.
REGAN, J., dissents with written reasons.