**HOOVER MOTOR EXPRESS COMPANY, Inc., Appellant,**

v.

**UNITED STATES of America,**
Appellee.

No. 13566.

United States Court of Appeals
Sixth Circuit.

Jan. 12, 1959.

withheld because of damage to goods shipped by defendant for which plaintiff was alleged to be liable. Defendant counterclaimed for the cost of repair and of shipment of the goods for purpose of repair.

The record presents mainly questions of fact, the parties in general being agreed on the applicable law. The evidential facts are not in dispute and are as follows: Plaintiff, a common carrier by motor vehicle, shipped 4 rectifiers for defendant by motor truck from Los Angeles, California, to Birmingham, Alabama. The rectifiers involved are large and heavy machines, each weighing some 1,500 pounds, and mounted in a cabinet, and crated. One crate had a hole in it, but the crates arrived in general in good condition, while each machine arrived in damaged condition. Defendant withheld $9,320.59 freight revenue due plaintiff for other shipments and counterclaimed in an action for the amount asserted to be due for the damage. The District Court gave judgment for $9,320.59 conceded by defendant to be due plaintiff and gave judgment for $8,074.67 in favor of defendant on its counterclaim.

Certain parts of the machines were screwed or bolted into the cabinet and also braced against the strain of transportation for some 2,000 miles in a motor vehicle. Plaintiff's principal claim is (1) that there was no evidence that the rectifiers were delivered to the originating carrier in good condition, and (2) that the damage resulted from inherent weakness in the rectifiers and improper preparation for shipment. It is established law that the burden rests on the shipper to prove delivery to the carrier in good condition. As to this feature of the case there was no evidence of probative value. The witnesses who were called to prove that the rectifiers were delivered to the carrier in an undamaged state included one who testified that the crating would normally have been done under his supervision, but he

Judson Harwood, Nashville, Tenn., for appellant.

Rondal B. Cole, Asst. U. S. Atty., Nashville, Tenn. (Fred Elledge, Jr., U. S. Atty., James R. Tuck, Asst. U. S. Atty., Nashville, Tenn., on the brief), for appellee.

Before ALLEN, Chief Judge, MILLER, Circuit Judge, and WEICK, District Judge.

ALLEN, Chief Judge.

This is an appeal from a judgment of the District Court entered in an action for certain freight revenue due plaintiff [1] from defendant, which had been

---

1. The parties will be denominated as in the court below.

had no recollection as to packing these particular rectifiers. He was not familiar with the construction of the machines and could not say whether he had packed the interior of the crating. He stated that the units themselves may have had "some structural faults * * mechanically." The shipping clerk had no independent recollection of loading the rectifiers. He testified that a fork lift machine was used in moving these large, heavy units and that employees were instructed to report to him any untoward incident in the loading. No such report was made. Obviously neither witness had any personal knowledge that the units were in good condition when shipped.

 The bill of lading states that the goods were received "in apparent good order * * * (Contents and condition of packages unknown)." The bill of lading is not proof as to the condition of the contents of the crates, for the parenthetical phrase was an express limitation on the carrier's acknowledgment that the goods were received in good order. Shore v. New York, New Haven and Hartford Railroad Company, 99 Conn. 129, 121 A. 344; Ohio Galvanizing and Manufacturing Company v. Southern Pacific Company, 6 Cir., 39 F. 2d 840. As stated in Tuschman v. Pennsylvania Railroad Company, 3 Cir., 230 F.2d 787, 791, the statement in the bill of lading as to "apparent good order" was prima facie evidence only that, as to parts which were open to inspection and visible, the goods were in good order at the point of origin. Here the parts were not visible and open to inspection.

█ The undisputed testimony as to the condition of the goods when received by the consignee established that the rectifiers had inherent weakness of construction and were not properly prepared for shipment. The inspection made immediately after the discovery that the rectifiers were damaged was made by Lowe, traffic manager of Hayes Aircraft, a principal witness for defendant, together with plaintiff's representative McDonald, each of whom signed the report. As to Rectifier No. 1901, the report stated that the amplifier, weighing about 25 or 30 pounds and fastened to the door by two small screws, broke loose from the door, fell on other parts of the instrument and damaged various parts. Lowe testified that the screws had no nuts and that they had come completely out of the door, letting the amplifier fall down "apparently by vibration." He also testified that the statements on the report were true, that the screws weren't broken off but had "backed out." The inspection report contained a question, part of which was "how in your judgment should" the item "have been packed or prepared for shipment?" The answer was "The amplifiers should be crated separately or have better support." Another witness for defendant testified that the damage was actually inside the cabinet.

Defendant contends that this report was simply presented to Lowe and signed as a matter of routine. but it affirmatively appears that the report was made in consultation with Lowe, who stated that it was correct.

With reference to the three other items, Serial Nos. 2378, 2379 and 2380, the following question was included in each inspection report: "If improperly boxed, crated, wrapped or packed, how in your judgment should they have been packed or prepared for shipment?" The answer as to these 3 rectifiers is to the same effect, as above quoted, that the instrument was not fully braced to support the heavy weight of approximately 1500 pounds. As to the rectifier described in plaintiff's Exhibit 6 the report stated that after removing the crate it was found that the frame supporting the reactors by two bolts had dropped out causing the reactor to drop on the motor for the fan. Several of the bolts holding the cabinet to the instrument were missing or had dropped into the base of the instrument. As to the rectifier described in plaintiff's Exhibit 7, in which the upper part of the instrument had shifted from the base, the report

stated "there were also loose bolts and nuts throughout the cabinet. * * * the parts attached to the door (on the inside) were loose * * *." As to the rectifier described in plaintiff's Exhibit 8, the statement was that several bolts and nuts in the base of the cabinet had worked loose from the cabinet and other parts of the rectifier. These reports were prepared immediately after the damage was discovered. The circumstance that one crate had a hole which was not shown to have caused any damage, and that the crates were scuffed and roughened on arrival, has little weight in view of the undisputed facts as to the damage itself inside the cabinets. The falling of parts of the machines inside each cabinet plus the continued vibration due to the lengthy motor transportation would inevitably result, not only in throwing some machine off base or out of alignment, as was the case, but would naturally result in jostling the crates. An expert who examined the rectifiers after they were returned to California for repair testified in effect that, in view of the weight they were expected to carry, cabinets far stronger structurally should have been used; that the welds used to brace the shelves supporting the major weight in the cabinet were parting at the fusion point of the weld, indicating a poor weld; that the welds were relatively few; that there should be more welds and additional bracing or attachments of some nature.

It is undisputed that screws and bolts which had not been broken, fell out within each of the cabinets, causing parts of machinery to fall from position and do damage. This fact requires a conclusion that the screws and bolts were not properly secured and the further conclusion that machines made up of heavy parts were not properly prepared for shipment. This fault on the part of the shipper relieves plaintiff from its heavy liability as carrier for goods it undertook to carry.

There being no substantial evidence in the record that the rectifiers were delivered to the originating carrier in good condition, and the undisputed evidence showing that there were defects in construction of the machines and preparation for shipment, the judgment in favor of the United States in the amount of $8,074.67 on its counterclaim is reversed and the case is remanded with instructions to dismiss said counterclaim.