**HARRIS TRUCK LINES, INC.,**
**Plaintiff-Appellant,**

**v.**

**CHERRY MEAT PACKERS, INC.,**
**Defendant-Appellee.**

**No. 13517.**

United States Court of Appeals
Seventh Circuit.

Feb. 7, 1963.

Rehearing Denied March 19, 1963.

Joseph E. Bell, Thomas P. Ward, Eugene H. Ruark, Chicago, Ill., for appellant.

John J. Kelly, Jr., George G. Kelly, Chicago, Ill., for appellee.

Before DUFFY, KNOCH and CASTLE, Circuit Judges.

CASTLE, Circuit Judge.

This Court's judgment of dismissal in this appeal (Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc., 7 Cir., 303 F.2d 609) was vacated by the Supreme Court on certiorari (83 S.Ct. 283) and the case remanded with directions that the appeal be heard on its merits.

This appeal involves a suit brought in the District Court by Harris Truck Lines, Inc., plaintiff-appellant, to recover freight

charges alleged to be due it from Cherry Meat Packers, Inc., defendant-appellee. Defendant's answer denied the indebtedness and asserted a counterclaim for damages allegedly sustained by reason of the negligence of the plaintiff in failing to provide adequate refrigeration for frozen meat shipped by defendant. Plaintiff's answer to the counterclaim denied its failure to provide adequate refrigeration, averred lack of negligence on its part, and alleged that whatever damage occurred was attributable to the condition of the meat when delivered for shipment, to the inherent nature of the shipment, and to the action of the defendant.

The case was tried without a jury. The District Court dismissed plaintiff's complaint, without making and entering findings of fact or conclusions of law with respect to the claims [1] asserted by plaintiff's action, and entered judgment for defendant on its counterclaim. The plaintiff appealed.

■ The failure of the District Court to make any findings of fact or to state its conclusions of law with respect to the claims asserted by the plaintiff's complaint requires that we reverse as to the judgment of dismissal and remand the cause with directions to vacate the order of dismissal, and for the purpose of the District Court's making and entering appropriate findings and conclusions and entering judgment accordingly. Rule 52 (a), Federal Rules of Civil Procedure (28 U.S.C.A.); Gomez v. United States, 7 Cir., 246 F.2d 878; Kweskin v. Finkelstein, 7 Cir., 223 F.2d 677. Cf. Krinsley v. United Artists Corp., 7 Cir., 225 F.2d 579; In re Rockford Baseball Club, 7 Cir., 201 F.2d 685; McClure v. O. Henry Tent & Awning Co., 7 Cir., 184 F.2d 636; In-

demnity Insurance Co. of North America v. Midwest Transfer Co., 7 Cir., 184 F.2d 633.

With respect to the defendant's counterclaim the District Court found and concluded, in substance, that the plaintiff on January 16, 1957, undertook to transport a cargo of fresh pork sausage from the defendant as consignor in Chicago to a Naval Supply Depot at San Diego, California; that the specifications covering the government's purchase contract provided for final inspection (following conditional acceptance pending final inspection) after delivery to the point of destination; that on the defendant's request for reinspection [which occurred after the government's initial rejection of the shipment] rejection of the sausage was confirmed on the basis of its odorous condition before and after cooking; and that on return of the 434 cartons of sausage to Chicago two boxes showed evidence of defrosting and refreezing. The court concluded that liability as an insurer attached when the plaintiff received the cargo from the defendant in apparent good order, "contents and condition of the contents of packages unknown"; [2] that there was damage to the shipment while it was in the plaintiff's custody as a common carrier; and that plaintiff is liable to the defendant for the damages claimed in the counterclaim.

The record discloses that the sausage was manufactured by the defendant in its meat plant, under the supervision of government inspectors,[3] on January 2nd, 4th and 7th, 1957. The casings used were hog intestines which had been on hand and stored, salted and unfrozen, in the basement of defendant's plant. At the close of each day the sausage manufac-

1. Plaintiff's complaint asserted claims for alleged (1) undercharges on freight due to defendant's mis-classification of the product shipped in the bills of lading defendant prepared; (2) undercharges due to listing of the net weight of the product rather than the gross weight of the product and its packaging; (3) freight charges due on three shipments with respect to which defendant withheld pay-

ment because of the controversy presented by defendant's counterclaim; and (4) freight charge for return of the rejected shipment from California on defendant's order.

2. Uniform Bill of Lading.

3. U. S. Department of Agriculture Inspector, John W. Rice and military personnel.

tured that day was boxed,[4] banded, stamped by military personnel and stored in defendant's freezer. No further inspection of the sausage was made until the cartons were reopened at their destination in San Diego, except that when the cartons were loaded from the freezer into plaintiff's refrigerated semi-trailer a temperature check was made by the Department of Agriculture Inspector in conjunction with the military representative and the temperature of the sausage was found to range from minus 4 to plus 4 degrees Fahrenheit. On January 16th, the day of the loading, the outdoor temperature at Chicago was between 10 and 20 degrees. The refrigeration equipment of the trailer operated independently of the tractor unit. The truck reached Los Angeles on January 19th at 10:00 P.M. Because shipments were not accepted at the Naval Depot between Friday afternoon and Monday morning the trailer remained at the Los Angeles terminal until Monday morning. Its refrigeration system was operating properly and maintaining the desired internal temperature of 10 degrees. It was left running on its independent power supply for the night. Driver Martin testified that he checked it again on Sunday morning and ascertained that it was maintaining the 10 degree temperature for which it was set. The trailer arrived at the San Diego Naval Depot on the morning of January 21st. When the sausage was inspected it was rejected "due to a disagreeable odor of a foreign nature ranging from slight to impressive"; an odor "characteristic of a casing odor" indicating that the casings had been affected. Forty per cent of the forty-eight boxes examined were found to be in such condition.[5] A reinspection requested by defendant confirmed the initial rejection. At the time of the inspection the sausage was found to be in the solid frozen state it was when delivered to the plaintiff, but two of the boxes had a temperature of 20 degrees—a tempera-

ture stated to be low enough to generally inhibit progress of spoilage or bacterial activity. There was no evidence that any of the sausage had been defrosted and refrozen.

Inspector Rice testified that when he examined two of the boxes of sausage when the cargo was returned to Chicago on February 11, 1957, he detected a casing odor which is common to hog-casing pork sausage which has been defrosted and refrozen. For the purpose of the inspection at San Diego several of the boxes of sausage from all of the manufacturing dates had been defrosted for examination and cooking.

There is nothing in the record to show the condition of the sausage from the standpoint of the objectionable casing odor at the time it was delivered to the plaintiff in sealed cartons for shipment. Only a temperature check of the sausage had been made as it was taken from the defendant's cooler. The cargo was delivered to the consignor in a solid frozen state with no evidence of defrosting and refreezing. There is no evidence to support a finding that the plaintiff was in any way responsible for the odorous condition the sausage was found to have on inspection and which caused its rejection. That it could have been caused by defrosting and refreezing does not on the record before us tend to establish that lack of proper refrigeration while the cargo was in the plaintiff's custody was the cause of the damage. Moreover it appears that although the plaintiff's refrigerated trailer could maintain the sausage at the temperature required it could not have refrozen the sausage if it had once become defrosted. And the sausage did reach its destination in its frozen state.

■ In our considered judgment the findings and conclusions of the District Court upon which the liability of the

---

4. The sausage was packed in ten pound boxes; six boxes to a carton.

5. Sausage from each manufacturing date was examined. There appears to be no controversy as to the propriety of the rejection.

plaintiff on the counterclaim is predicated are clearly erroneous.

The defendant failed to prove that the cause of the sausage's rejection was not present when it was delivered to the plaintiff in sealed cartons in a frozen state. It did not meet the burden of proving that the goods were delivered to the carrier in good condition. Cf. Armour Research Foundation of Illinois Institute of Technology v. Chicago, Rock Island and Pacific Railroad Company, 7 Cir., 311 F. 2d 493.

The judgment against the plaintiff on the defendant's counterclaim is reversed; the judgment of dismissal of the plaintiff's complaint is reversed; and the cause is remanded to the District Court with directions to vacate the dismissal of the plaintiff's complaint, to make and enter appropriate findings of fact and conclusions of law with respect to the claims asserted by the plaintiff's complaint, and to enter judgment thereon accordingly.

Reversed and remanded with directions.