**M. GARCIA COMPANY, INC.**
vs.
**BEACON FAST FREIGHT CO.,**

District Court Department
Appellate Division, Southern District
Trial Court of the
Commonwealth of Massachusetts

January 4, 1980

Robert Athas for the plaintiff.
Norman Erlich for the defendant.

Present: Lee, P.J., Rider & Welsh, JJ.

RIDER, J. This is an action in tort for negligence commenced in the Superior Court Department, Norfolk County Division, and remanded to the District Court Department, Brookline Division, for trial. The plaintiff, M. Garcia Co., Inc., seeks

to recover for an alleged shortage of hides from a shipment received and transported from New York City by the defendant, Beacon Fast Freight Co., Inc. (Beacon), and delivered to the plaintiff at its place of business in South Boston, Massachusetts.

In its answer, the defendant denies that it breached any contract with the plaintiff or that it was negligent, and further asserts that the goods were transported and delivered to the plaintiff by the defendant in the same condition in which they were received by the defendant.

The court found for the plaintiff and assessed damages in the sum of $1,370.00.

At the trial there was evidence tending to show:

The shipment of hides, comprised of fifty-one bales, originated in Costa Rica and landed in New York City where it was received by the defendant from the consignor, Lafayette Shipping Co. of New York, on November 12, 1973. Pursuant to the bill of lading, the shipment was delivered to the plaintiff-consignee at South Boston in November, 1973. At this time it was noted by employees of the plaintiff and defendant that eighteen of these bales were without metal baling straps, were partly open and had been restitched. At the time of receipt of the shipment, employees of the plaintiff notified the employees of the defendant of the condition of these eighteen bales, set the eighteen bales aside, and made the notation on the delivery receipt "18 bales unstrapped and open."

A copy of the packing slip prepared by the seller, La Bilbaina, S.A. of Costa Rica, accompanied the shipment. A copy of this packing slip had also been mailed to the plaintiff by the seller prior to delivery of the shipment to the plaintiff. The seller is not a party to these proceedings.

Upon receipt of the shipment, the defendant (sic)[1] employees immediately set aside these eighteen bales; inspected and counted the hides therein; made handwritten entries of shortages of footage which appear under the heading "CONTENIDO" on the three pages of the packing slip; and computed the shortage to be the difference between the footage received by the plaintiff and the typewritten amount of footage stated on the packing slip as contained in each of the fifty-one bales. Each bale was numbered on the packing slip, from number 473 through 523, and the total shortage of footage of hides was computed to be 2,476.25 feet. The value of the missing footage was in the amount of $1,370.00.

The initial claim on behalf of the plaintiff for the alleged shortage was made on March 20, 1974.[2] In reply to the claim, Beacon sent the following letter under date of July 1, 1974 to Recovery Services International, 250 Broadway, New York, N.Y. 10007:

"Concerning your claim dated June 18, 1974, you will note by the enclosed delivery receipt that there is no indication relative to any material being missing, but mearly (sic) that the strapping was broken.

"In addition, we were never informed from the consignee M. Garcia Company, that there was a shortage involved in this shipment. Also, in reading the survey report from Mr. Robert Yales, Woburn, Massachusetts, any stitching that may have been done to the bales would certainly not have been done by any of our people and we have no way of knowing exactly what the bales should look like or their contents when we deliver a shipment. We have questioned the driver who picked up the material and the driver who delivered the material and both have advised us that the condition when we received it, was the same when it was delivered.

"We find that we must deny your claim and suggest that you look to the shipper for any re-imbursement for the shortages."

This letter, the memorandum of the original bill of lading, and the delivery receipt were introduced into evidence as exhibits.

At the trial, the packing slip prepared by the seller of the goods, which listed by numbered bales the alleged weight and contents of each, was admitted into evi-

---

[1]This should doubtless be "plaintiff's."
[2]The report does not indicate by whom and to whom the initial claim was made.

dence over the objection of counsel for the defendant. Counsel contended that its admission for the purpose of establishing the footage of hides allegedly missing from the shipment, and thus the damage allegedly suffered by the plaintiff, constituted hearsay.

There was no oral testimony from witnesses as to the condition of the bales when received by the defendant.

The defendant seasonably filed requests for rulings of law which, with the court's rulings thereon, are as follows:

"1. The liability of a carrier for damage to an interstate shipment of goods is a matter of federal substantive law governed by U.S. Code Title 49, Section 20 (11).

Allowed.

"2. The liability of the Defendant herein is to be governed by U.S. Code Title 49, Section 20(11) and the case law interpreting the same.

Denied.

"3. A carrier is not an insurer but is only liable for damage to goods where the nature of the transaction makes it reasonably clear that the loss or damage was caused by it. **U.S. vs. Seaboard Coastline Railroad,** 384 F. Supp. 1103 (E.D. Va., 1974).

Allowed.

"4. To establish a prima facie case, the Plaintiff must prove that the goods were delivered to the carrier in good condition, arrived in damaged condition or with a portion of such goods missing, and the amount of pecuniary loss suffered thereby. **Blue Bird Food Products Co. vs. Baltimore & Ohio Rail Co.,** 492 F. 2d 1329 (3d Cir., 1974); **U.S. vs. Seaboard Coastline Railroad,** supra; **World Wide Meat, Inc. vs. Chicago & N.W. Transp. Co.,** 383 F. Supp. 807 (N.D. Iowa 1974).

Allowed.

"5. The introduction of a bill of lading issued by a carrier with the notation 'Received . . . in apparent good order' is insufficient as a matter of law, to establish without further direct evidence that goods were delivered to the carrier in good condition. **Blue Bird Food Prod. Co. vs. B&O Rail Co.,** supra.

Denied.

"6. If the court finds that the goods transported by the Defendant, upon delivery to the Plaintiff, were damaged or missing, to hold the Defendant liable the Plaintiff must also prove that the goods were received in good condition by the Defendant for shipment.

Allowed.

"7. A finding of the court that the goods transported by the Defendant were in damaged condition or a portion thereof missing upon delivery to the Plaintiff, without additional evidence that the goods were received by the Defendant for shipment in good condition is insufficient to hold the Defendant liable for said damage.

Allowed.

"8. The Plaintiff, without proof that the goods were delivered to the Defendant in good condition for shipment, has failed to maintain its burden of proof.

Allowed, but the Court finds as a fact that the defendant received the goods in good condition.

"9. Upon all of the law presented, the Defendant is not liable for any alleged damage to the goods delivered to the Plaintiff which is the subject of the within suit.

Denied."

The report states that it contains all of the evidence material to the questions reported.

The defendant claims to be aggrieved by the admission into evidence of the packing slip prepared by the seller of the goods, not a party herein, and by the court's rulings on requests numbered 2, 5, 8 and 9.

This was an interstate shipment. The liability of a carrier for damage to an interstate shipment is a matter of federal substantive law governed by 49 U.S.C. s. 20(11), which makes the delivery carrier liable "for the full actual loss, damage or injury" which it causes to the property. **Missouri Pac R. Co. v. Elmore & Stahl,** 377 U.S. 123, 137, 84 S. Ct. 1142, 1144 (1964); **World Wide Meats, Inc. v. Chicago & N.W. Trans. Co.,** 383 F. Supp. 807, 809 (N.D. Iowa 1974). Thus the trial judge properly allowed the defendant's request for ruling number 1.

Having correctly instructed himself, the judge was inconsistent in his denial of defendant's request for ruling number 2. The denial of this request was erroneous, but from our reading of the report it did not constitute prejudicial error. It is clear from 'the judge's rulings on defendant's requests numbers 3, 4, 6 and 7 that he applied the correct general principles of law relative to the liability of a carrier of an interstate shipment.

For reasons stated below, we need not decide whether or not the packing slip prepared by the seller was inadmissible in evidence as hearsay. Presumably, the judge admitted this document into evidence as an entry, writing or record made in the regular course of business under G.L. c. 233, s. 78, as amended. The seller was not a party to the proceeding, and the report does not indicate that the judge made the preliminary findings required by the statute. However, the admission of the packing slip implies a finding of the facts prerequisite to its admission. **Sawyer & Co. v. Southern Pac. Co.,** 354 Mass. 481, 483 (1968), and cases cited.

1. Under federal law, in an action to recover from a carrier for damage to a shipment, the shipper establishes his prima facie case when he shows delivery to the carrier in good condition, arrival in damaged condition, and the amount of damages. **Missouri Pac. R. Co. v. Elmore & Stahl, supra** at 138, and cases cited. The plaintiff carried the burden of demonstrating to the court that when the merchandise was delivered by the shipper to Beacon, the shipment was in a complete and undamaged condition. The determinative issue is whether the plaintiff established a prima facie case of liability.

In the action of **Yuspeh v. Acme Fast Freight, Inc.,** 54 So. 2d 866 (1951), aff'd 63 So. 2d 743 (1973), the plaintiff, as shipper and consignee, ap, led from a judgment dismissing his suit against the defendant, a common carrier, for alleged damage to merchandise while it was being transported from Chicago, Illinois to plaintiff's place of business in New Orleans, Louisiana. In affirming the judgment, the Court of Appeals of Louisiana stated at page 868:

"He [plaintiff] was content to submit his case on a showing that the shipment indicated that it had been damaged by water before delivery to him from the defendant's truck. He now seeks to throw up the defendant the burden of proving that the merchandise was not in such damaged condition when received for shipment, notwithstanding that the law clearly imposes the burden on him. We have not been cited to any authority, and our own research reveals none, holding that it is the duty of the defendant carrier to establish that the shipment was not in good order when received, in the absence of any affirmative proof emanating from plaintiff that the merchandise was in good order and condition when accepted by the carrier for shipment."

In the instant case, the memorandum of the original bill of lading dated November 7, 1973 shows the shipper to be Lafayette Shipping Co. at "Pier 3 PA Bklyn," and the shipment as "51 Bales Leather Hides" consigned to M. Garcia Co., Inc., 185 South St., Boston, Mass. It bears the date stamp "Received No. 12, 1973, Beacon Fast Freight Co., Inc."

Fifty-one bales of leather hides were delivered by the defendant to the plaintiff. According to the report, "18 of these bales were without metal baling straps, partly open and had been restitched" when they were delivered to the plaintiff. There is no reported evidence of the condition of these bales at the time of their delivery by the shipper to the defendant. We do not know whether or not at that time these bales were secured by metal baling straps or whether they were then already restitched. From Exhibit number 5, the letter from the defendant to Recovery Services International, there was evidence that the condition of the shipment when it was received from the shipper was the same as that in which it was delivered to the plaintiff. The shipping weight stated on the bill of lading is "5645." The alleged shortage of footage of hides was computed to be 2,476.25 feet. A shortage of this dimension would doubtless result in a substantial weight loss. Yet there is no reported evidence of the weight of the shipment at the time of its

delivery to the plaintiff. The failure of the plaintiff to make proof of the condition of the shipment at the time of its delivery by the shipper to the defendant is fatal to the plaintiff's case. A finding that the shortage of hides occurred while the shipment was in the custody of the defendant would have been based on speculation and conjecture, which the law does not permit. **Armour Research Foundation of Ill. Inst. of Technology v. Chicago, Rock Island and Pac. R.R. Co.,** 311 F.2d 493, 494 (7th Cir. 1963), cert. den. 372 U.S. 966, 83 S. Ct. 1091 (1963); **Glass-Tite Industries, Inc. v. Spector Freight Systems, Inc.,** 102 R.I. 301, 230 A.2d 254, 258 (1967).

2. Among the recitations of the memorandum of the original bill of lading are: "Received ... the property described below, in apparent good order, except as noted (contents and condition of contents of packages unknown) ... " The plaintiff contends: (1) that if at the time of delivery of the shipment to the defendant "18 of these bales were without baling straps, partly open and had been restitched," this condition should have been noted on the bill of lading by Beacon; (2) it was not so noted; and therefore, (3) the removal of the baling straps, the extraction of the missing hides and the restitching of the eighteen bales occurred while the shipment was in the custody of Beacon.

We do not adopt this syllogism. Although a bill of lading can establish prima facie that the merchandise being shipped is in good condition, **United States v. Mississippi Valley Barge Line Co.,** 285 F.2d 381, 388-389 (8th Cir. 1960); **World Wide Meats, Inc. v. Chicago and N.W. Trans. Co.,** supra at 809, the statement in the bill of lading as to "apparent good order" was prima facie evidence only that, as to bales which were open to inspection, the goods were in good order when delivered to the carrier. **Hoover Motor Express Co. v. United States,** 262 F.2d 832, 834 (6th Cir. 1959); **Tuschman v. Pennsylvania R.R. Co.,** 230 F.2d 787, 791 (3rd Cir. 1956). The bill of lading is not proof as to the contents and condition of the contents of the bales, for the parenthetical phrase noted above was an express limitation on the carrier's acknowledgment that the bales were received in good order. **Hoover Motor Express Co. v. United States,** supra at 834. As stated above, there was no direct evidence of the condition of the eighteen bales when they were delivered from the shipper to Beacon. There was no evidence that there were metal baling straps on the eighteen bales when they were delivered to Beacon. If we assume that there were no metal baling straps on the eighteen bales when they were delivered to Beacon, there was no evidence that the eighteen bales were unfit for transportation by the carrier in the condition in which they were received. There was no evidence that Beacon knew, or had reason to know, of the number of hides supposed to be in each of the eighteen bales. There was no evidence of the weight of the shipment when received by the plaintiff.

We conclude that the court's finding that the defendant received the goods in good condition is neither supported by the reported evidence nor warranted by the quoted recitations from the memorandum of the original bill of lading. The denial by the court of defendant's requests for rulings numbers 5 and 9 constituted prejudicial error. The only special findings of fact made by the trial judge are found in connection with his allowance of the defendant's request for ruling number 8. Beacon contends that the reported evidence does not support the findings of the judge. The findings of the trial judge may not be reversed unless there is no evidence to sustain them and they are plainly wrong. **McMahon v. Monarch Life Ins. Co.,** 345 Mass. 261, 262-263 (1962), and cases cited. In our view, there was no evidence to support the judge's finding.

Finding for the plaintiff is vacated. Judgment to be ordered for the defendant.

**So ordered.**