IN RE: ANTHONY F.

[No. 1524, September Term, 1980.]

*Decided July 9, 1981.*

The cause was submitted on briefs to MORTON, MOORE and MASON, JJ.

Submitted by *Alan H. Murrell, Public Defender,* and *Martha Weisheit, Assistant Public Defender,* for appellant.

Submitted by *Stephen H. Sachs, Attorney General, Alice G. Pinderhughes, Assistant Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *Eric E. Wright, Assistant State's Attorney for Montgomery County,* for appellee.

MORTON, J., delivered the opinion of the Court.

After a hearing in the District Court for Montgomery County (Juvenile Division), Anthony F., a juvenile, was

found to have committed a number of delinquent acts involving housebreakings and theft. He was committed to the Maryland Training School for Boys. The commitment was suspended and he was placed in the custody of his mother under a program of probation.

In this appeal Anthony F. presents the following questions:

"1. Was Appellant's confession the product of an illegal arrest?

2. Did the State fail to show by a preponderance of the evidence that Appellant's confession was voluntary?

3. Was Appellant's statement obtained in violation of juvenile arrest procedures set forth in Courts and Judicial Proceedings Article, sec. 3-814 (b)?

4. Was the evidence insufficient to sustain the convictions?"

At the hearing on Anthony's motion to suppress a statement he gave to the police, Officer John Straughan testified that he and another officer went to Anthony's residence about 9:20 a.m. on January 19, 1980, for the purpose of arresting him. In response to the police knocking on the front door of the residence, it was opened by Anthony's sixteen year old sister. According to Officer Straughan, he asked her if Anthony was at home and she stated he was upstairs asleep. He asked her to awaken Anthony as they would like to talk with him. Officer Straughan testified: "I don't remember the exact words but she did invite us in."

Officer Straughan was not in uniform but he was accompanied by Officer Michael Clinton, who was in uniform. According to Officer Clinton: ". . . I don't remember any verbal comment from the young lady. However, she did open the door wide for us to enter."

When Anthony arrived downstairs, the officers inquired whether his parents were home and were told that his

mother was out running errands but would be home later. Officer Straughan left his name and telephone number with the sister and requested that the mother call him upon her return. Anthony was then taken to police headquarters.

The arrest of Anthony was based on information the police had received from two individuals that Anthony had participated with them in burglarizing a number of homes in the area. While it is apparent that the police had probable cause to arrest Anthony, it is conceded that they did not have a warrant for his arrest. It is this lack of an arrest warrant which Anthony argues makes the arrest illegal and any subsequent statements to the police inadmissible.

We start with the recent decision of the United States Supreme Court in *Payton v. New York,* 445 U.S. 573 (1980), where it was held, at 576:

> "[T]hat the Fourth Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment, prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." (Citations omitted.)

At the outset we think the holding applies equally to adults and juveniles. *See In Re Gault,* 387 U.S. 1 (1967). Thus, we are presented with the precise factual issue: was this a nonconsensual entry? The juvenile judge made a specific finding that the entry was consented to by Anthony's sister and although he thought she was only twelve or thirteen years old, she was competent to give such consent as an occupant of the household. It was later established that the sister was sixteen years old at the time she permitted the police to enter the home.

From our independent review of the evidence adduced below, we agree with the finding of the juvenile judge that the entry of the police into Anthony's home could not be classified as nonconsensual. The facts surrounding the police entry here in no way resemble those which confronted the Supreme Court in *Payton.* There the police went to Payton's

apartment for the purpose of effecting his warrantless arrest. When there was no response to their knock on the entrance door, they used crowbars to break open the door and enter the apartment.

In the companion case of *Riddick v. New York,* 445 U.S. 573 (1980), the police, without an arrest warrant, knocked on the front door of Riddick's home. The door was opened by Riddick's three year old son. The police entered, saw Riddick in bed and immediately placed him under arrest. As Mr. Justice Stevens, who wrote the majority opinion, stated, at 583:

> "[A]lthough his 3-year-old son answered the door, the police entered before Riddick had an opportunity either to object or to consent."

The Court observed in *Payton,* at 583:

> "Finally, in both cases we are dealing with entries into homes made without the consent of any occupant."

It is true that in *Riddick* the door was opened by his three year old son who obviously was an occupant of the home, but it is clear that the Supreme Court treated him as incapable of formulating a judgment whether to admit or refuse the entry of the police — a postulation self-evidently sound. On the other hand, we think it equally self-evident that a normal sixteen year old young lady, who was certainly an occupant of the house with her mother and brother, is capable of determining whether to resist or consent to the entry of the police into the family household. Here the evidence is uncontradicted that "she did invite us [police] in." Since we conclude that the juvenile judge was correct in his finding that there was a consensual entry by the police, there was no illegal arrest of Anthony. Accordingly, the exclusion of his statement to the police after his arrest, on the ground of an illegal arrest, is not warranted.

Anthony's arrest took place on January 19, 1980. The decision in *Payton* was handed down on April 15, 1980, nearly three months later. *Payton* should serve as a

poignant signal to law enforcement officers that the issue we have discussed could easily be avoided by obtaining an arrest warrant in order to make a routine felony arrest of a suspect.

We cannot agree with Anthony's second contention that "[t]he State failed to show by a preponderance of the evidence that appellant's confession was voluntary." The record shows that when Anthony was arrested in the living room of his home, he was advised of his *Miranda* rights (*Miranda v. Arizona,* 384 U.S. 436 (1966)). He was then taken to a commissioner who advised him of the charges against him and his "rights." Again, prior to questioning by the police, he was told of his rights. On each occasion he acknowledged that he understood his rights and did not request a lawyer or any member of his family to be present.

Nevertheless, his mother arrived at the police station about thirty-five or forty minutes after the questioning began. She was advised why Anthony had been arrested and that he was being questioned about the charges. According to Officer Straughan:

> "I further advised her that she could come in and talk to us about — I mean sit down while I was questioning her son, and I explained to her that it generally did go better, the conversation between myself and Anthony, without her, and she agreed that she would wait out in the lobby."

He asked her permission to take Anthony "out into the neighborhoods and check and he could point the houses out. At this time she stated that she didn't want her son to go out with us to actually show us these houses that were broken into. . . ." Officer Straughan also asked her if "she could allow us to check Anthony's room. She stated no, that she would go home and check for any property that might be there."

The police officers affirmatively testified that no promises were made to Anthony nor any coercion exercised toward him.

Under our reading of the entire record, we conclude that the State met its burden of showing that Anthony's statement " 'was the product of a free and unconstrained will which had not been overborne or compelled.' " *See Walker v. State,* 12 Md. App. 684, 696 (1971) and *Robinson v. State,* 3 Md. App. 666, 672 (1968).

Anthony also challenges the admission of his statement because it "was obtained in violation of juvenile arrest procedures as set forth in Courts and Judicial Proceedings Article, Sec. 3-814 (b)." That section provides:

"(b) If a law enforcement officer takes a child into custody he shall immediately notify, or cause to be notified, the child's parents, guardian, or custodian of the action. After making every reasonable effort to give notice, the law enforcement officer shall with all reasonable speed:

(1) Release the child to his parents, guardian, or custodian or to any other person designated by the court, upon their written promise to bring the child before the court when requested by the court, and such security for the child's appearance as the court may reasonably require, unless his placement in detention or shelter care is permitted and appears as required by § 3-815, or

(2) Deliver the child to the court or a place of detention or shelter care designated by the court."

There is nothing in the record to support Anthony's contention. At the time of his arrest a police officer left his address and telephone number with Anthony's sister with the request that his mother contact them immediately. The mother arrived at the police station within thirty-five or forty minutes after the police had started questioning Anthony. There is nothing in the record to indicate what disposition was made of Anthony after he had given the statement; and in his brief Anthony points to no specific action on the part of the police which would be violative of

300

the section. Accordingly, we see the statute as no impediment to the admission of Anthony's statement.

Finally, it is contended that the evidence was insufficient to sustain the convictions. We have examined the record in light of the test for sufficiency of the evidence to sustain a conviction enunciated in *State v. Rusk,* 289 Md. 230, 240 (1981), and find Anthony's contention to be without merit.

*Judgments affirmed; costs to be paid by appellant.*