526 A.2d 30

**Patrick Shawn Edward McINTYRE**

v.

**STATE of Maryland.**

**No. 41, Sept. Term, 1986.**

Court of Appeals of Maryland.

June 4, 1987.

608

Dennis H. Eisman of Philadelphia, Pa. (Alan L. Fishbein and Fishbein & Fishbein, P.A., on the brief), Ellicott City, for appellant.

Richard B. Rosenblatt, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, COUCH *, McAULIFFE and ADKINS, JJ.

---

* COUCH, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

MURPHY, Chief Judge.

This case involves a fifteen-year-old juvenile who, following his arrest for rape, and after several requests to see his mother were denied, executed a written waiver of *Miranda* [1] rights and gave the police a statement pertaining to the alleged crime. The question presented is whether, in the circumstances, the juvenile's purported *Miranda* waiver was knowingly, intelligently and voluntarily made and if so, whether the ensuing statement, which was admitted into evidence at the trial, was voluntary in the traditional sense.

I

Patrick McIntyre, a fifteen-year-old tenth-grade student, was arrested and handcuffed by police at 7:00 a.m. on October 1, 1984, as he was on his way to school. As he was being transported to the Howard County Police Station by Detectives Witte and Myers, McIntyre was told that he had been arrested for the crime of rape. After the officers informed McIntyre of the alleged victim's name, they informed him of his *Miranda* rights, including his right to remain silent, to talk to a lawyer and to have the lawyer present during any police questioning. They also told him that a lawyer would be appointed to represent him, if he could not afford his own counsel, before any questions were asked. McIntyre said that he understood these rights. He then asked the detectives when he could see his mother. Myers explained that he could not see his mother at that time because he had been charged as an adult. No questions were asked of McIntyre during the journey to the police station.

At the station, the police again fully advised McIntyre of his *Miranda* rights, and again he said that he understood them. He again requested to see his mother, and his request was again denied. McIntyre thereafter executed a

---

**1.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

written form waiving his *Miranda* rights. At 7:55 a.m., he gave the police a statement concerning the alleged crime.

No pretrial motion to suppress the introduction of the *Miranda* waiver form or the ensuing statement was made. At the trial, Myers testified with respect to McIntyre's execution of the *Miranda* waiver form, volunteering that McIntyre had asked twice to see his mother before waiving his *Miranda* rights. When the State offered the waiver form into evidence, McIntyre's counsel objected. He said that he had not previously known of McIntyre's several requests to see his mother, and he claimed that the requests were "tantamount to a request for counsel, because that's how he would have gotten counsel." At McIntyre's request the court conducted a suppression hearing out of the presence of the jury "on the voluntariness, and whether he (McIntyre) was given the (*Miranda*) warnings."

As it was the State's burden at the suppression hearing to prove voluntariness by a preponderance of the evidence (*see State v. Kidd*, 281 Md. 32, 375 A.2d 1105, *cert. denied*, 434 U.S. 1002, 98 S.Ct. 646, 54 L.Ed.2d 498 (1977)), the prosecutor questioned Myers concerning McIntyre's waiver of *Miranda* rights. The detective testified that McIntyre appeared nervous but not frightened; that he was calm when his rights were read to him; that he did not appear "to be excited or flustered"; and that he said he understood his *Miranda* rights and would talk to the police. Myers testified that, while in the interview room at the police station, McIntyre asked for the second time "when he could see his mother", that it was "just a matter of fact question", and was not an "emotional request". As in his earlier testimony, Myers testified concerning his response to McIntyre's request to see his mother. He also testified that McIntyre was not under the influence of any intoxicants, did not appear to be ill or have any physical or mental infirmities, that he never asked to have an attorney present, and that no threats, promises or inducements were made to obtain McIntyre's waiver of *Miranda* rights.

McIntyre did not testify at the suppression hearing and offered no evidence in support of his motion to suppress. In arguing for suppression, his counsel pointed out that McIntyre had been arrested on his way to school, that he was nervous when placed in the police car, that he was only fifteen years old, and that his two requests to see his mother had been denied. Counsel maintained that, in the circumstances, McIntyre "needed the opportunity to speak to his mother to secure counsel," and that juveniles ordinarily are afforded the right to have a parent present at the police station. McIntyre's counsel concluded his argument by saying, "That's what *Miranda* was designed to guard against, undue influence and overreaching by police in obtaining statements."

The court (Fischer, J.) denied the motion to suppress. It stated that "from hearing the evidence ... the statement was given voluntarily without any undue inducements, and ... the *Miranda* warnings were given." Additionally, the court said that it knew of no "right that a person has to have their mother present during the taking of any statement."

McIntyre's statement to the police was subsequently admitted in evidence. It was essentially exculpatory as he denied having committed the rape. The statement contained several admissions, however, that the State urged at trial constituted, along with other evidence, proof of McIntyre's guilt.

The jury convicted McIntyre of first degree rape, and he appealed. In an unreported opinion, the Court of Special Appeals rejected McIntyre's argument that the waiver of *Miranda* rights was invalid because he had been denied "counsel of a parent." It also found no merit in McIntyre's argument that his ensuing statement to the police was involuntary. Specifically, the intermediate appellate court held that, if a statement was otherwise voluntary, "the fact that the parent of the juvenile is not permitted to attend the interrogation has no bearing on the admissibility of the

voluntary statement." We granted McIntyre's petition for certiorari which presented the single question:

"Where a fifteen year old is arrested and charged with a serious crime, is denial of access to a parent by the police prior to extracting a statement [from him] violative of both the Fifth and Sixth Amendments to the Constitution of the United States as applied to Maryland under the Fourteenth Amendment."

In support of his position, McIntyre argues that juveniles subjected to custodial interrogation are in need of greater protection from constitutional violations than adults. He claims that such protection may be provided through the presence of a parent or adult friend whose guidance is needed to protect a juvenile's constitutional rights. He contends that his request to see his mother was tantamount to invoking his right to consult an attorney. Because these requests occurred immediately after receiving *Miranda* warnings, he maintains that the police should not have continued to question him, and consequently, the resulting statement was inadmissible. McIntyre relies upon cases from other states requiring the presence of an "interested" adult prior to a juvenile's waiver of constitutional rights.

Alternatively, McIntyre contends that the totality of the circumstances surrounding his arrest, waiver, and interrogation indicates that he did not knowingly and voluntarily waive his rights to silence and assistance of counsel. Because he was only fifteen years old, was denied access to his mother, and had no previous experience with the criminal justice system, McIntyre argues that the trial court should have found his waiver of *Miranda* rights to be invalid and suppressed his statement.

## II

Under *Miranda*, in order "to use statements obtained during custodial interrogation of the accused, the State

must warn the accused prior to such questioning of his right to remain silent and of his right to have counsel, retained or appointed, present during interrogation." *Fare v. Michael C.*, 442 U.S. 707, 717, 99 S.Ct. 2560, 2568, 61 L.Ed.2d 197, *reh'g denied*, 444 U.S. 887, 100 S.Ct. 186, 62 L.Ed.2d 121 (1979). Once *Miranda* warnings have been given, the subsequent procedure is clear:

> "If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise.... If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to the police, they must respect his decision to remain silent."

*Miranda*, supra, 384 U.S. at 473–74, 86 S.Ct. at 1627–28.

*Miranda* was based, the Supreme Court has said, on its perception "that the lawyer occupies a critical position in our legal system because of his unique ability to protect the Fifth Amendment rights of a client undergoing custodial interrogation." *Fare, supra*, 442 U.S. at 719, 99 S.Ct. at 2568–69. The Court explained that

> "[t]he *per se* aspect of *Miranda* was thus based on the unique role the lawyer plays in the adversary system of criminal justice in this country. Whether it is a minor or an adult who stands accused, the lawyer is the one person to whom society as a whole looks as the protector of the legal rights of that person in his dealings with the police and the courts. For this reason, the Court fashioned in *Miranda* the rigid rule that an accused's request for an

attorney is *per se* an invocation of his Fifth Amendment rights, requiring that all interrogation cease."

*Id.*

That "the attorney plays a vital role in the administration of criminal justice under our Constitution" was emphasized in *Miranda*, 384 U.S. at 481, 86 S.Ct. at 1631. "It is this pivotal role of legal counsel," the Court said in *Fare*, "that justifies the *per se* rule established in *Miranda*, and that distinguishes the request for counsel from the request for a probation officer, a clergyman, or a close friend." 442 U.S. at 722, 99 S.Ct. at 2570.

In *Fare*, the Supreme Court held that a request of a sixteen-year-old juvenile charged with murder, made while undergoing custodial interrogation, to see his probation officer, with whom he had a special relationship, did not constitute a *per se* invocation of the juvenile's rights to remain silent and to counsel. Among other reasons, the Court said that probation officers are not usually trained in the law and, therefore, are not in a position to advise persons as to their legal rights. And merely because a relationship of trust and cooperation might have existed between the accused and the probation officer did not, the Court held, indicate that the probation officer was capable of rendering effective legal advice to protect the juvenile's rights during interrogation. To otherwise conclude, said the Court, quoting from *Beckwith v. United States*, 425 U.S. 341, 345, 96 S.Ct. 1612, 1615, 48 L.Ed.2d 1 (1976), would amount to "an extension of the *Miranda* requirements [that] would cut this Court's holding in that case completely loose from its own explicitly stated rationale." Such an extension, it said, would apply the rigid rule of *Miranda* to "a juvenile's request for almost anyone he considered trustworthy enough to give him reliable advice." *Fare, supra,* 442 U.S. at 722–23, 99 S.Ct. at 2571.

 In undertaking to prove a waiver of *Miranda* rights, "a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently

waived his privilege against self-incrimination and his right to retained or appointed counsel." *Miranda, supra,* 384 U.S. at 475, 86 S.Ct. at 1628. The "heavy burden" shouldered by the State is only proof by a preponderance of the evidence. *Colorado v. Connelly,* —— U.S. ——, 107 S.Ct. 515, 523, 93 L.Ed.2d 473 (1986); *Nix v. Williams,* 467 U.S. 431, 444 n. 5, 104 S.Ct. 2501, 2509 n. 5, 81 L.Ed.2d 377 (1984); *United States v. Matlock,* 415 U.S. 164, 178 n. 14, 94 S.Ct. 988, 996 n. 14, 39 L.Ed.2d 242 (1974); *State v. Kidd,* 281 Md. 32, 38, 375 A.2d 1105 (1977). The question whether an accused waived *Miranda* rights is not "one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case." *North Carolina v. Butler,* 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979). Thus, "the determination whether statements obtained during custodial interrogation are admissible against the accused is to be made upon an inquiry into the totality of the circumstances surrounding the interrogation, to ascertain whether the accused in fact knowingly and voluntarily decided to forego his rights to remain silent and to have the assistance of counsel." *Fare, supra,* 442 U.S. at 724–25, 99 S.Ct. at 2571–72, citing *Miranda,* 384 U.S. at 475–77, 86 S.Ct. at 1628–29. "This totality-of-the-circumstances approach", according to *Fare,* 442 U.S. at 725, 99 S.Ct. at 2572, "is adequate to determine whether there has been a waiver *even where interrogation of juveniles is involved"* (emphasis added). The Court there said:

> "We discern no persuasive reasons why any other approach is required where the question is whether a juvenile has waived his rights, as opposed to whether an adult has done so. The totality approach permits—indeed, it mandates—inquiry into all the circumstances surrounding the interrogation. This includes evaluation of the juvenile's age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth

Amendment rights, and the consequences of waiving those rights."

*Id.*

The Court concluded in *Fare* that the "totality-of-the-circumstances analysis [may] take into account those special concerns that are present when young persons, often with limited experience and education and with immature judgment, are involved." *Id.* Thus it said, "[w]here the age and experience of a juvenile indicate that his request for his probation officer *or his parents* is, in fact, an invocation of his right to remain silent, the totality approach will allow the court the necessary flexibility to take this into account in making a waiver determination." *Id.* (emphasis added).

In reversing the holding of the Supreme Court of California that there was no waiver of *Miranda* rights, the Court in *Fare* concluded that the juvenile voluntarily and knowingly waived his Fifth Amendment rights. It said that the record demonstrated that the interrogating police officers "took care to ensure that respondent understood his rights"; that they "fully explained" to him that he was being questioned in connection with a murder; that they informed him of his *Miranda* rights and ascertained that he understood them; that there was "no indication in the record that respondent failed to understand what the officers told him"; that "no special factors indicate[d] that respondent was unable to understand the nature of his actions"; that he was a sixteen year old juvenile "with several arrests, ... had served time in a youth camp, ... had been on probation for several years [and] was under the full-time supervision of probation authorities." 442 U.S. at 726, 99 S.Ct. at 2572. The Court also noted that there was "no indication that [respondent] was of insufficient intelligence to understand the rights he was waiving, or what the consequences of that waiver would be ... [and] he was not worn down by improper interrogation tactics or lengthy questioning or by trickery or deceit." *Id.* at 726–27, 99 S.Ct. at 2572–73.

As the Court so recently stated in *Colorado v. Connelly, supra,* 107 S.Ct. at 523, the "sole concern of the Fifth Amendment, on which *Miranda* was based, is governmental coercion," and the voluntariness of the *Miranda* waiver "has always depended on the absence of police over-reaching." *Id.* In the final analysis, the relinquishment of *Miranda* rights must be voluntary in the sense of constituting a free and deliberate choice rather than intimidation, coercion or deception. *Id.* "*Miranda* protects defendants against government coercion leading them to surrender rights protected by the Fifth Amendment; it goes no further than that." *Id.* at 524.

### III

The Supreme Court has stated that great care must be taken to assure that statements made to the police by juveniles are voluntary before being permitted in evidence. *See, e.g., In re Gault,* 387 U.S. 1, 55, 87 S.Ct. 1428, 1458, 18 L.Ed.2d 527 (1967); *Haley v. Ohio,* 332 U.S. 596, 599, 68 S.Ct. 302, 303, 92 L.Ed. 224 (1948). In *Haley,* a pre-*Miranda* case, a fifteen-year-old youth gave police a written confession after being held incommunicado for five days. During that time, the juvenile was subjected to protracted interrogation, coupled with some physical coercion. In addition, the police refused to permit the youth to see his mother or a lawyer. In finding the confession involuntary, the Court noted that "[a]ge 15 is a tender and difficult age for a boy [and] he cannot be judged by the more exacting standards of maturity." 332 U.S. at 599, 68 S.Ct. at 304. *Gallegos v. Colorado,* 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962), another pre-*Miranda* case, involved a fourteen-year-old juvenile who gave the police a written confession after being held incommunicado and questioned for six days. During that time, he was not permitted to see a lawyer, his parents, or any other adult. In finding the confession involuntary, the Court explained that the youth was "not equal to the police in knowledge and understanding of the consequences of the questions and answers

being recorded and [was] unable to know how to protect his own interests or how to get the benefits of his constitutional rights." 370 U.S. at 54, 82 S.Ct. at 1212. In both *Gallegos* and *Haley*, the Supreme Court found the confessions involuntary based on the totality of the circumstances surrounding the making of the statement. In each case, the Court found that the youth of the juvenile was a crucial factor in determining, in the totality of the circumstances, whether the confession was voluntary under the due process clause of the Fourteenth Amendment.

We applied these principles in *Miller v. State*, 251 Md. 362, 247 A.2d 530 (1968), a case involving a confession given by a sixteen-year-old ninth grade student in a capital murder case. Taken into custody by the police and advised of his *Miranda* rights, the defendant made a statement. While he did not ask to see his parents before making the statement, he refused to sign it in their absence. At trial, there was an objection to the introduction of the unsigned statement on the ground that the juvenile did not knowingly and intelligently waive his privilege against self-incrimination and to counsel under *Miranda*. Noting that waiver of a fundamental constitutional right is usually an intentional relinquishment or abandonment of a known right or privilege, we said that the waiver determination " 'must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.' " *Id.* at 378, 247 A.2d 530 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). We observed that the Supreme Court "has emphasized that admissions of juveniles require special caution." *Id.* 251 Md. at 378–79, 247 A.2d 530. We said, however, that "age . . . , in itself, does not render a confession involuntary", *id.* at 379, 247 A.2d 530, and that "a young accused may waive his constitutional rights and make a voluntary statement admissible in evidence", *id.* at 380, 247 A.2d 530. After considering the totality of the circumstances, we concluded that, after careful and deliberate consideration, the defendant waived his

*Miranda* rights and that his ensuing confession was voluntary. *Id.* at 381, 247 A.2d 530.

A clear majority of jurisdictions have utilized the totality of the circumstances test, including the presence of parents as one factor, in determining the validity of a juvenile's waiver of constitutional rights.[2] The weight that courts have given to a denial of parental access, however, has varied considerably. Some mention it as only one factor with no indication of its importance. *E.g., State v. Jackson,* 118 Ariz. 270, 576 P.2d 129 (1978); *State v. Hunt,* 607 P.2d 297 (Utah 1980); *Theriault v. State,* 66 Wis.2d 33, 223 N.W.2d 850 (1974). Other courts have emphasized the importance of parental involvement, *e.g., Interest of Thompson,* 241 N.W.2d 2 (Iowa 1976); *State v. Hogan,* 297 Minn. 430, 212 N.W.2d 664 (1973); *State v. Benoit,* 126 N.H. 6, 490 A.2d 295 (1985); *State in Interest of S.H.,* 61 N.J. 108, 293 A.2d 181 (1972), or stated that it would be preferable to have parents present during a juvenile's interrogation, *e.g., Quick v. State,* 599 P.2d 712 (Alaska 1979); *State v. Oliver,* 160 Conn. 85, 273 A.2d 867 (1970), *cert. denied,* 402 U.S. 946, 91 S.Ct. 1637, 29 L.Ed.2d 115 (1971); *Interest of Stiff,* 32 Ill.App.3d 971, 336 N.E.2d 619 (1975). Another court has treated a juvenile's request to consult with parents as a circumstance requiring case-by-case examination to evaluate its significance. *United States ex rel. Riley v. Franzen,* 653 F.2d 1153, 1160 (7th Cir.1981). The court there considered the denial of access to parents as more important than the refusal to call a probation officer in *Fare v. Michael C., supra.* According to the court, "the proper characterization of such a [parental] request depends upon an examination of the abilities of the parent or guardian requested on the one hand, and of the accused juvenile on the other." 653 F.2d at 1161. *See also*

---

**2.** Some courts apply the totality standard, but apparently do not include access to parents as a factor. *E.g., State v. Gullings,* 244 Or. 173, 416 P.2d 311 (1966); *In re Williams,* 265 S.C. 295, 217 S.E.2d 719 (1975); *O'Neil v. State,* 2 Tenn.Crim.App. 518, 455 S.W.2d 597 (1970), *cert. denied,* Tenn., June 1, 1970.

*Chaney v. Wainwright,* 561 F.2d 1129, 1131 (5th Cir.1977), *reh'g en banc denied,* 570 F.2d 1391 (5th Cir.1978), *cert. denied,* 443 U.S. 904, 99 S.Ct. 3095, 61 L.Ed.2d 871 (1979) (discussing Chaney's independence from his mother as well as his awareness of his rights in refusing to equate request to call his mother with request for counsel).

As in *Miller v. State, supra,* Maryland has consistently examined the totality of the circumstances to determine whether a suspect knowingly, intelligently, and voluntarily waived constitutional rights before giving a statement to police. *Lodowski v. State,* 307 Md. 233, 254, 513 A.2d 299 (1986) (*Lodowski II*). In *Bean v. State,* 234 Md. 432, 199 A.2d 773 (1964) and *Green v. State,* 236 Md. 334, 203 A.2d 870 (1964), both pre-*Miranda* cases, we applied this approach to statements made by juveniles. The Court of Special Appeals has also consistently applied the totality of the circumstances approach in determining the validity of a juvenile's waiver of rights. *E.g., In re Lucas F.,* 68 Md. App. 97, 510 A.2d 270, *cert. denied,* 307 Md. 433, 514 A.2d 1211 (1986); *In re Anthony F.,* 49 Md.App. 294, 431 A.2d 1361 (1981); *aff'd on other grounds,* 293 Md. 146, 442 A.2d 975 (1982); *King v. State,* 36 Md.App. 124, 373 A.2d 292, *cert. denied,* 281 Md. 740 (1977); *In re Appeal No. 245, Term 1975,* 29 Md.App. 131, 349 A.2d 434 (1975); *Walker v. State,* 12 Md.App. 684, 280 A.2d 260 (1971); *State v. Hance,* 2 Md.App. 162, 233 A.2d 326 (1967).

These cases recognize the importance of parental involvement in a juvenile's decision to waive *Miranda* rights, and they consider this factor in evaluating the validity of the juvenile's waiver. Certainly the lack of access to parents prior to interrogation does not automatically make a juvenile's statement inadmissible. *Bean, supra,* 234 Md. at 440, 199 A.2d 773; *Green, supra,* 236 Md. at 342, 203 A.2d 870. In *Bean,* however, 234 Md. at 440, 199 A.2d 773, we observed that neither the defendant nor his father requested an opportunity to speak with the other. And in *Green,* the record contained no evidence that the police had pre-

vented contact between the defendant and his family. *Green, supra,* 236 Md. at 342, 203 A.2d 870.

The Court of Special Appeals has consistently listed access to parents as a relevant factor in assessing the validity of a juvenile's waiver. *E.g., Walker, supra,* 12 Md.App. at 708, 230 A.2d 260; *Hance, supra,* 2 Md.App. at 168, 233 A.2d 326. The court has also carefully noted whether parents were present and whether either the juvenile or the parents requested an opportunity to consult with each other prior to the interrogation. *E.g., King, supra,* 36 Md.App. at 131, 373 A.2d 292; *Anthony F., supra,* 49 Md.App. at 298, 431 A.2d 1361. Furthermore, in two decisions finding juveniles' statements to be involuntary, the court considered denial of access to parents as an important factor in the decision. *Appeal No. 245, supra,* 29 Md.App. at 139, 349 A.2d 434; *Walker, supra,* 12 Md.App. at 708, 280 A.2d 260.[3] Thus, including access to parents as a factor in the waiver evaluation is consistent with Maryland law.[4]

Notwithstanding McIntyre's urging, we are not persuaded to depart from the totality of the circumstances test in determining the validity of a *Miranda* waiver and in assessing the traditional voluntariness of a juvenile's statement to the police. In so concluding, we recognize that some states have developed the so-called interested adult rule pursuant to which an adult interested in the juvenile's welfare, generally a parent, must be informed of the child's rights, have an opportunity to consult privately with the child, and be present during any interrogation. *E.g., Lewis*

---

3. In *In re Lucas F., supra,* the Court of Special Appeals held a ten-year-old boy's waiver invalid. Although the court discussed the lack of parental guidance prior to Lucas F.'s waiver, the court emphasized the suspect's age rather than the absence of his parents in reaching its decision. 68 Md.App. at 103–04, 510 A.2d 270

4. In *Lodowski II, supra,* 307 Md. at 254–55, 513 A.2d 299, we listed the factors previously identified as relevant to the voluntariness of a suspect's statement: the suspect's age, intelligence, education, experience, suggestibility, and mental and physical health; the police officers' treatment of the suspect; and the methods and length of interrogation.

*v. State,* 259 Ind. 431, 288 N.E.2d 138, 142 (1972); *State in Interest of Dino,* 359 So.2d 586, 594 (La.1978); *Com. v. A Juvenile (No. 1),* 389 Mass. 128, 449 N.E.2d 654, 657 (1983) (applies absolutely for children under fourteen; for those fourteen or over State has very heavy burden if no consultation permitted); *In re E.T.C.,* 141 Vt. 375, 449 A.2d 937, 940 (1982). In adopting this approach, the courts relied on the traditional legal protections afforded minors, *Lewis, supra,* 288 N.E.2d at 141–42, studies indicating that a significant percentage of juveniles do not understand their constitutional rights, *Dino, supra,* 359 So.2d at 593; *A Juvenile, supra,* 449 N.E.2d at 656; *E.T.C., supra,* 449 A.2d at 939, and a belief that a *per se* rule would assist the police by providing a definite standard. *Lewis, supra,* 288 N.E.2d at 141; *Dino, supra,* 359 So.2d at 592. California equates juveniles' requests to see their parents with requests to consult an attorney. *People v. Burton,* 6 Cal.3d 375, 491 P.2d 793, 99 Cal.Rptr. 1 (1971). According to the California Supreme Court, minors desiring assistance naturally turn to their parents. Thus, in the absence of evidence to the contrary, the courts should treat minors' requests to see their parents as requests for assistance of counsel. *Id.* 491 P.2d at 797–98. Similarly, Florida considers juveniles' requests to call their parents as assertions of the juveniles' Fifth Amendment privilege against self-incrimination. *Sublette v. State,* 365 So.2d 775 (Fla.Dist.Ct. App.1978), *appeal dismissed,* 378 So.2d 349 (Fla.1979); *Dowst v. State,* 336 So.2d 375 (Fla.Dist.Ct.App.), *cert. denied,* 339 So.2d 1172 (Fla.1976). Thus, when juveniles in custody request an opportunity to talk with their parents, the police must stop questioning them.

■ In rejecting the *per se* approach of these cases in favor of the totality of the circumstances test, we note the observation of the Pennsylvania Supreme Court:

"protection of juveniles against the innate disadvantages associated with the immaturity of most youth may . . . be

achieved in a manner that affords more adequate weight
to the interests of society, and of justice...."
*Com. v. Christmas,* 502 Pa. 218, 465 A.2d 989, 992 (1983).[5]

## IV

In reviewing the trial court's determination of the *Miranda* waiver question and of the statement's admissibility, we consider the entire record and make our own independent determination of the issue. *Lodowski v. State,* 302 Md. 691, 711, 490 A.2d 1228 (1985), *vacated,* — U.S. —, 106 S.Ct. 1452, 89 L.Ed.2d 711, *on remand,* 307 Md. 233, 513 A.2d 299 (1986) (*Lodowski I*). We accept the trial court's factual findings about the circumstances surrounding the interrogation unless clearly erroneous, but determine for ourselves whether these facts demonstrate a voluntary waiver of constitutional rights. *Id.; Watson v. State,* 282 Md. 73, 84, 382 A.2d 574, *cert. denied,* 437 U.S. 908, 98 S.Ct. 3100, 57 L.Ed.2d 1140 (1978). In this regard, the record must demonstrate with unmistakable clarity that the trial court made the necessary factual findings to support its conclusion that the waiver was valid and the statement properly admissible in evidence. *See Lodowski II, supra,* 307 Md. at 251, 513 A.2d 299.

In the present case, the only evidence before the trial court on the question of whether the *Miranda* waiver was knowing, intelligent and voluntary, and the subsequent statement to police voluntarily given, was adduced by the State at the suppression hearing. As already indicated, it showed that McIntyre was fifteen years old and a tenth grade student; that he had been arrested early in the

---

5. Pennsylvania recently abandoned the interested adult rule. First, the Pennsylvania Supreme Court replaced the rule with a rebuttable presumption that a juvenile's waiver was invalid without the opportunity to consult with an interested adult. *Com. v. Christmas,* 502 Pa. 218, 465 A.2d 989, 992 (1983). One year later, the court adopted the totality of the circumstances approach and listed the presence of an interested adult as one factor in the analysis. *Com. v. Williams,* 504 Pa. 511, 475 A.2d 1283, 1288 (1984).

morning while on his way to school; that he had been handcuffed, put in a police car and told that he had been accused of raping a named victim; that he was transported to police headquarters and twice read *Miranda* rights; that before waiving these rights he twice asked to see his mother; and that his request was twice denied. The evidence further showed that while McIntyre was nervous, he was not flustered and said he understood his rights and would talk to the police. The questioning was of brief duration, less than an hour, culminating in McIntyre giving an essentially exculpatory statement. Evidence was also adduced by the State that McIntyre was not under the influence of any intoxicants, did not appear to be mentally or physically impaired, that he never asked to see a lawyer, and that no promises or threats were made to obtain the *Miranda* waiver and the ensuing statement.

The trial judge concluded "from hearing the evidence" that *Miranda* warnings were given, that the statement was voluntarily made, and that McIntyre had no right to have his mother present at the police station. The court did not specifically focus on whether McIntyre knowingly and voluntarily decided to forego his rights to remain silent and to have the assistance of counsel within the contemplation of *Miranda.* While there was evidence of McIntyre's age and educational level in high school, there was no other evidence respecting his background, including prior experience with the justice system. The court did not specifically address the fact of McIntyre's youthful age, and his several requests to see his mother before waiving his *Miranda* rights, in evaluating the validity of the waiver or the voluntariness of the statement.

On the other hand, as in *Fare v. Michael C., supra,* the record contains evidence that the interrogating officers took care to ensure that McIntyre understood his rights. And, as in *Fare,* there is no indication on the record that McIntyre failed to understand what the officers told him or that any special factors existed to indicate that he was unable to understand the nature of his actions. Nor, as in *Fare,* was

there any indication that McIntyre "was of insufficient intelligence to understand the rights he was waiving, or what the consequences of that waiver would be ... [and] he was not worn down by improper interrogation tactics or lengthy questioning or by trickery or deceit." *Fare, supra,* 442 U.S. at 726–27, 99 S.Ct. at 2572–73.

■ We think it implicit from the record in this case that the trial court's finding of voluntariness encompassed both the *Miranda* waiver and the subsequent statement to the police; indeed, as the case was tried, the two determinations were blended together and treated essentially as one, both by counsel and the court. That a denial of parental access to a juvenile charged as an adult with a crime is a factor, and a very important one, in applying the totality of the circumstances test is entirely clear. But proof in this totality formulation that a juvenile's request to see a parent was "in fact, an invocation of [the juvenile's] right to remain silent", *Fare,* 443 U.S. at 725, 99 S.Ct. at 2572, is essentially a subjective determination, dependent on the juvenile's state of mind at the time the request for parental access is made and denied. As McIntyre did not testify and adduced no evidence at the suppression hearing, and as the record is otherwise unrevealing, we cannot conclude that his mere requests to see his mother, in the circumstances, factually constituted an invocation of his right to remain silent.

Applying the relevant totality test to the particular facts of this case, we conclude from our independent review of the record that the trial judge could properly conclude, and did determine with sufficient clarity that the State's proof that there was a knowing and voluntary waiver of constitutional rights satisfied the preponderance of the evidence test. That no evidence was adduced by the State concerning McIntyre's prior experience with the justice system does not alone compel a holding that the requisite evidence did not in its totality satisfy the preponderance standard.

Also to be factored into the totality test is that McIntyre's statement was exculpatory and was given shortly after his arrival at the police station under circumstances that disclosed no police coercion. Nor was there any evidence to show that McIntyre's mother would have been able to advise him of his legal rights, and the consequences of waiving them, had she been present at the police station. Thus, in the totality of the circumstances of this case, we shall affirm the determination of the trial judge at the suppression hearing that McIntyre voluntarily waived his constitutional rights in making his statement to the police.[6]

JUDGMENT AFFIRMED, WITH COSTS.

ADKINS, Judge, dissenting.

Because I believe there are at least three grounds upon which McIntyre's statement to the police should have been excluded from evidence, I respectfully dissent.

## I.

As the majority observes, courts have long applied special safeguards in cases involving police interrogation of youths charged with criminal activity, and in the use of statements obtained during interrogation. This vigilance reflects the common sense recognition that juveniles often labor under the disadvantages of immaturity, ignorance, inexperience and naivete, and are unable, therefore, to exercise competent judgment in protecting or advancing their interests.[1]

---

6. The Juvenile Causes Act, Maryland Code (1984 Repl. Vol.), § 3–814(b) of the Courts and Judicial Proceedings Article requires a law enforcement officer who "takes a child into custody" to immediately notify the child's parents, guardian or custodian. Whether the statute applies to juveniles charged as adults with criminal offenses was not raised below and, consequently, we do not determine whether this statute has any application in this case.

1. Our treatment of juveniles outside the criminal arena mirrors this rationale. The law generally allows minors to disavow contracts, *McBriety v. Spear*, 191 Md. 221, 60 A.2d 528 (1948); *Monumental Bldg. Ass'n v. Herman*, 33 Md. 128 (1870); forbids minors to purchase liquor, Md.Code (1957, 1982 Repl.Vol.) Art. 27 § 400A; restricts the

*In Re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *Gallegos v. Colorado,* 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962); *Haley v. Ohio,* 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948); *Lewis v. State,* 259 Ind. 431, 288 N.E.2d 138 (1972); *State v. Benoit,* 126 N.H. 6, 490 A.2d 295 (1985); *In Re Lucas F.,* 68 Md.App. 97, 510 A.2d 270, *cert. denied,* 307 Md. 433, 514 A.2d 1211 (1986); *Walker v. State,* 12 Md.App. 684, 280 A.2d 260 (1971). For example, in reversing the murder conviction of a 15–year-old boy on the basis that incriminating statements elicited during custodial interrogation were violative of due process, though voluntary, the Supreme Court in *Haley v. Ohio,* 332 U.S. at 601, 68 S.Ct. at 304, 92 L.Ed. at 229, rejected the assumption "that a boy of fifteen, without aid of counsel ...," has a full appreciation of his constitutional rights and is competent to make a knowing waiver. It perceptively observed:

Age 15 is a tender and difficult age for a boy of any race. He cannot be judged by the more exacting standards of maturity. That which would leave a man cold and unimpressed can overawe and overwhelm a lad in his early teens. This is the period of great instability which the crisis of adolescence produces.

332 U.S. at 599, 68 S.Ct. at 304, 92 L.Ed. at 228.

Similarly, in *Gallegos v. Colorado,* the Court considered the dilemma of a 14–year-old murder suspect held incommunicado for five days before a confession was obtained. In reversing the juvenile's conviction, the Court rejected the argument that youth and immaturity are irrelevant considerations where confessions are obtained voluntarily, reasoning

[A] 14–year–old boy, no matter how sophisticated, is unlikely to have any conception of what will confront him

---

freedom of children to marry, Md.Code (1984, 1986 Cum.Supp.) Family Law Art. § 2–301, and obtain driving privileges, Md.Code (1977, 1984 Repl.Vol.) Transportation Art. § 16–103; regulates their school attendance, Md.Code (1978, 1984 Repl.Vol. 1986 Cum.Supp.) Education Art. § 7–301, and employment activities, Md.Code (1977, 1985 Repl.Vol.) Art. 100 § 4—§ 14—to name only a few examples.

> when he is made accessible only to the police. That is to say, we deal with a person who is not equal to the police in knowledge and understanding of the consequences of the questions and answers being recorded and who is unable to know how to protect his own interests or how to get the benefits of his constitutional rights.

370 U.S. at 54, 82 S.Ct. at 1212, 8 L.Ed.2d at 328. This legal intuition, moreover, has been persuasively buttressed by empirical studies and scholarly articles that raise serious doubts about juveniles' intellectual and psychological capabilities to comprehend constitutional rights. *See, e.g.,* Feld, *Criminalizing Juvenile Justice: Rules of Procedure for the Juvenile Court,* 69 Minn.L.Rev. 141 (1984); Grisso, *Juveniles' Capacities to Waive Miranda Rights: An Empirical Analysis,* 68 Calif.L.Rev. 1134 (1980); Ferguson & Douglas, *A Study of Juvenile Waiver,* 7 San Diego L.Rev. 39 (1970).

To effectuate special safeguards for juveniles, some courts equate a juvenile's request for a parent or guardian as tantamount to an invocation of Fifth Amendment rights. *See, e.g., People v. Rivera,* 41 Cal.3d 398, 221 Cal.Rptr. 562, 710 P.2d 362 (1985); *People v. Burton,* 6 Cal.3d 375, 99 Cal.Rptr. 1, 491 P.2d 793 (1971); *State v. Johnson,* 719 P.2d 1248 (Mont. 1986); *Sublette v. State,* 365 So.2d 775 (Fla. Dist.Ct.App.1978), *appeal dismissed,* 378 So.2d 349 (Fla. 1979). Other courts have created an interested adult rule which requires that a juvenile have the opportunity to consult with an informed adult before making a valid waiver of constitutional rights. *Lewis v. State,* 259 Ind. 431, 288 N.E.2d 138 (1972); *State In Interest of Dino,* 359 So.2d 586 (La.1978), *cert. denied,* 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978); *In re E.T.C.,* 141 Vt. 375, 449 A.2d 937 (1982); *People v. Castro,* 118 Misc.2d 868, 462 N.Y.S.2d 369 (N.Y.Sup.Ct.1983); *see also Commonwealth v. A Juvenile,* 389 Mass. 128, 449 N.E.2d 654 (1983) (modified interested adult rule) and *State v. Benoit,* 126 N.H. 6, 490 A.2d 295 (1985) (heightened totality of the circumstances review for juvenile waivers).

Also realizing juvenile vulnerabilities, legislatures have uniformly enacted exclusive juvenile proceedings statutes, and some jurisdictions have statutorily provided special safeguards for juvenile waivers of constitutional rights. *See, e.g.,* Colo. Rules of Juvenile Procedure, Chapt. 28, Rule 3 (1987) (requires that both parent and juvenile be notified of constitutional rights); Conn.Gen.Stat.Ann. §§ 46b–136 and 46b–137 (West 1987) (the former requires the appointment of counsel even in absence of a request by a juvenile and the latter disallows statements, admissions or confessions made by a juvenile unless made in the presence of a parent or guardian); Tex. Family Code Ann. § 51.09 (Vernon 1986) (requires waiver of constitutional rights to be made by juvenile *and* attorney of the juvenile).

In Maryland, the Juvenile Causes Act, Code, (1973, 1984 Repl.Vol.), Cts. & Jud.Proc. Art. § 3–801 *et seq.,* provides a panoply of statutory safeguards for juveniles, and reflects a strong public policy commitment to juvenile welfare. Indeed, in recognition that juvenile offenders are different from adult offenders, it has often been acknowledged that the Juvenile Causes Act, insofar as it relates to juvenile misconduct, is protective and rehabilitative in nature, rather than retributive and penal. *In re Dewayne H.,* 290 Md. 401, 430 A.2d 76 (1981); *In re David K.,* 48 Md.App. 714, 429 A.2d 313 (1981); *In re Davis,* 17 Md.App. 98, 299 A.2d 856 (1973). Of special note are § 3–821 which mandates that a juvenile is entitled to assistance of counsel at every stage of a juvenile proceeding, *see In re Gault, supra,* and § 3–814(b) which requires that "[i]f a law enforcement officer takes a child into custody he shall immediately notify, or cause to be notified, the child's parent, guardian or custodian of the action." [2]

Juvenile waivers, therefore, present issues of both constitutional and public policy dimensions. Statements obtained

---

**2.** Whether the latter subsection applies to a juvenile who, as here, has been charged as an adult is an issue not presented by the petition for *certiorari.*

from juveniles during police interrogations invite special caution and should be carefully scrutinized, not simply for evidence of physical or psychological coercion, but for some demonstration that the juvenile comprehended his constitutional rights and the implications of any waiver of those rights.

We must approach this case with these considerations in mind—considerations with which the majority does not disagree. What the majority does do is reject the rule of *Burton* and the interested adult rule in favor of a totality of the circumstances approach when testing the validity of a juvenile's waiver of *Miranda* rights. While I strongly disagree with the majority's application of the totality analysis to the facts of this case (of which more later), I also cannot accept its rejection of the *Burton* doctrine or the interested adult rule.

## II.

Turning first to the *Burton* doctrine, I note that in the context of a young person's waiver of *Miranda* protections the totality analysis does not come into play if the youthful defendant has requested an attorney. If that request is made or if the defendant indicates a desire to remain silent, all interrogation must cease. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *see also Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); *Radovsky v. State,* 296 Md. 386, 464 A.2d 239 (1983). If a request for an attorney is made, but interrogation continues, despite the request for and without the presence of counsel, any statement made is *per se* inadmissible. *Id.; see also Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *Orozco v. Texas,* 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969). Totality review is generally not invoked under these circumstances.

In the case before us it is undisputed that McIntyre twice asked for his mother. I think this was tantamount to a request for an attorney. Interrogation should have stopped. In *Burton, supra,* the California Supreme Court

enunciated a *per se* rule that when "a minor is taken into custody and is subjected to interrogation, without the presence of an attorney, his request to see one of his parents, made at any time prior to or during questioning, must, in the absence of evidence demanding a contrary conclusion, be construed to indicate that the minor suspect desires to invoke his Fifth Amendment privilege." 6 Cal.3d at 383–384, 99 Cal.Rptr. at 5, 491 P.2d at 798. The court was persuaded to adopt this rule because it is simply "fatuous to assume a minor in custody will be in a position to call an attorney for assistance...." 6 Cal.3d at 382, 99 Cal.Rptr. at 5, 491 P.2d at 797. This mirrors a similar rationale offered in *Commonwealth v. Cain*, 361 Mass. 224, 229 n. 3, 279 N.E.2d 706, 710 (1972), where the court observed that the *Miranda* warning of a right to assistance of counsel is "hollow" when a juvenile is "denied access to his father who, practically speaking, [is] the only avenue through which he could effectively evaluate and, if he wished, exercise the right to counsel." When juveniles request to see a parent or guardian, they are seeking assistance and protection from the only people they are familiar with, and while perhaps constitutionally imprecise, it cannot be doubted that the request is the equivalent of a request for legal assistance.

Furthermore, a request for a parent is distinguishable from a request to see a probation officer like that in *Fare v. Michael C.*, 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197, *reh'g denied*, 444 U.S. 887, 100 S.Ct. 186, 62 L.Ed.2d 121 (1979). There the Court held that a juvenile's request to see his probation officer was not a *per se* invocation of Fifth Amendment rights under *Miranda*. A probation officer has an ultimate loyalty to the State, and because of this obvious conflict of interest, cannot offer a juvenile meaningful assistance in the exercise of constitutional rights. *See People v. Castro*, 118 Misc.2d at 880, 462 N.Y.S.2d at 377.

Moreover, because of the uniqueness of the parent-child relationship—legally, morally and psychologically—when a child, facing police interrogation, requests to see his parent,

"it is unrealistic to attribute no significance to his call for help from the only person to whom he normally looks—a parent or guardian." 6 Cal.3d at 382, 99 Cal.Rptr. at 5–6, 491 P.2d at 797–798; *see also United States ex rel. Riley v. Franzen,* 653 F.2d 1153 (7th Cir.1981), *cert. denied,* 454 U.S. 1067, 102 S.Ct. 617, 70 L.Ed.2d 602. Though holding *Fare* dispositive in a case involving a juvenile request for a parent, the court reasoned

> [a] parent may significantly aid a juvenile in asserting his Fifth Amendment privilege. The parent may be, or be able to provide, an attorney for the child. Even a lay parent, unlike a probation officer, may not encourage the suspect to talk with the police or feel bound to report any confession which the child may make in confidence.

653 F.2d at 1160.

To be sure, other courts, like the majority, have interpreted *Fare* as rejecting the *Burton* approach as applied to juvenile requests for a parent. *See, e.g., Franzen,* 653 F.2d at 1161; *State ex rel. Juv. Dept. v. Gibson,* 79 Or.App. 154, 718 P.2d 759 (1986). These cases have seized upon *Fare's* selective *Miranda* analysis of the unique role an attorney plays in protecting a defendant's Fifth Amendment privilege. *See also People v. Rivera,* 41 Cal.3d 388, 221 Cal. Rptr. 562, 710 P.2d 362 (1985) (Mosk, J., dissenting); *but see State v. Johnson,* 719 P.2d 1248 (Mont.1986) (rejecting *Fare* approach on state constitutional grounds.)[3] I am unpersuaded, nevertheless, to extend the narrow holding of *Fare* to include a juvenile's request for a parent, especially in light of the fact that the *Fare* Court did not examine this compelling issue. *See Fare,* 442 U.S. at 725, 99 S.Ct. at 2572, 61 L.Ed.2d at 213.

### III.

Other jurisdictions have adopted the interested adult rule which provides a more comprehensive safeguard to juve-

---

**3.** No issue of State constitutional grounds is before us in this case. The petition for *certiorari* raised only federal constitutional questions.

niles facing police interrogation. Under this rule, before a juvenile may effect a valid waiver of constitutional rights, the State must demonstrate that a "parent or interested adult was present, understood the warnings and had the opportunity to explain [the] rights to the juvenile so that the juvenile understands the significance of waiver of [those] rights." *Commonwealth v. A Juvenile,* 389 Mass. at 134, 449 N.E.2d at 657. *Accord Lewis v. State,* 259 Ind. 431, 288 N.E.2d 138 (1972); *State In Interest of Dino,* 359 So.2d 586 (La.1978). It has been construed as a *per se* rule; the absence of meaningful parental consultation essentially creates an irrebuttable presumption the waiver was invalid. *See State v. Rebstock,* 418 So.2d 1306 (La.1982), *cert. dismissed,* 459 U.S. 1190, 103 S.Ct. 841, 74 L.Ed.2d 1032 (1983).

The Massachusetts rule, however, is a modified version of the interested adult rule. For juveniles under the age of 14, no waiver of constitutional rights can be effective without the state's demonstration that the meaningful adult consultation took place. For juveniles 14 or older,

> there should ordinarily be a meaningful consultation with the parent, interested adult, or attorney to ensure that the waiver is knowing and intelligent. For a waiver to be valid without such a consultation the circumstances should demonstrate a high degree of intelligence, experience, knowledge, or sophistication on the part of the juvenile.

389 Mass. at 134, 449 N.E.2d at 657; *see also Commonwealth v. MacNeill,* 399 Mass. 71, 502 N.E.2d 938 (1987) (In re-affirming this standard, court approved the trial judge's determination of a voluntary waiver in the absence of parental consultation where the trial judge expressly employed special caution in view of the defendant's youth).

This standard creates a *per se* interested adult rule for juveniles under 14, and mandates a vigorous review of any waiver made by a juvenile 14 or older in the absence of any meaningful adult consultation. This approach may be viewed as a species of the totality of the circumstances analysis, but it differs from the conventional totality ap-

proach in that it mandates a heightened review of juvenile waivers, and expressly weighs the absence of an interested adult more heavily than other factors. The Massachusetts rule also has the benefit of providing guidance to police who seek to question juvenile suspects or defendants, and strongly discourages police authorities from preventing family contact. Moreover, it assures that an unsophisticated and inexperienced juvenile will not journey through the criminal justice process alone and unguided.

Maryland should adopt the Massachusetts approach as part of its constitutional totality analysis, *see In Re Lucas F.*, 68 Md.App. 97, 510 A.2d 270 (1986), because the approach is consistent with our strong state policy of affording special safeguards to juveniles taken into police custody, Cts. & Jud.Proc. Art. § 3–814(b), and is not inconsistent with the *Fare* analysis, which did not even address the issue of juvenile waiver in the absence of parental consultation.

In the case before us, there is no question the waiver failed to meet the heightened standard. McIntrye made the waiver and subsequent statement without the benefit of any parental consultation, and as the following discussion will reveal, the State adduced no evidence that would suggest McIntrye was so extraordinary a juvenile as to possess a high degree of intelligence, experience, sophistication or knowledge; the absence of his mother, therefore, is fatal to the validity of the waiver.

## IV.

A conventional totality analysis, as applied in Maryland, also requires reversal in this case. In holding that the trial judge properly determined that McIntyre waived his constitutional rights voluntarily, the majority opinion accurately recites the well established tenets of the totality standard. I cannot, however, approve the majority's application of that standard to the facts of this case. A thorough examination of the record reveals that the majority's totality analysis lacks the rigor that is constitutionally mandated. *Fare v. Michael C.*, 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d

197, *reh'g denied,* 444 U.S. 887, 100 S.Ct. 186, 62 L.Ed.2d 121 (1979); *Lodowski v. State,* 302 Md. 671, 490 A.2d 1228 (1985); *vacated,* —— U.S. ——, 106 S.Ct. 1452, 89 L.Ed.2d 711, *on remand,* 307 Md. 233, 513 A.2d 299 (1986) (Lodowski II).

While the record in this case is woefully sparse, the facts demonstrated vividly the character of the arrest and custodial interrogation, and necessitate, therefore, a brief factual recapitulation. The State's only witness concerning these events was Detective Myers, one of the investigating officers. He testified that at 7:00 a.m., in an orchestrated arrest, a unit of the Howard County Special Operations Section, described repeatedly by Detective Myers as a "SWAT" team, arrested McIntyre in front of his home as he was going off to school. McIntyre was handcuffed, placed in a "SWAT" vehicle, and then transported to an unmarked police car, occupied by Detective Myers and his investigating partner. On cross examination at the suppression hearing, Detective Myers conceded that at that time McIntyre was quite nervous. After receiving *Miranda* warnings, McIntyre requested to see his mother and was refused.

Upon arriving at the police station, he was placed in an interrogation room, and verbally warned of his *Miranda* rights. He did not ask any questions about those rights nor did he request a lawyer. He did, however, ask again to see his mother and was refused. After stating he understood his *Miranda* rights, McIntyre waived those rights orally and by signing a waiver form. The police detectives then commenced their interrogation which lasted nearly an hour. During the interrogation, McIntyre provided "exculpatory" statements, including alibi witnesses, that aided the police in their investigation of the crime, and were used against him at trial.

It is significant that the State adduced no evidence as to McIntyre's intelligence, maturity, knowledge, or access to his parents, (a factor particularly relevant where a juvenile is arrested in front of his home at 7:00 a.m.) or as to any prior experience with the criminal justice system. Only his

age, specific grade level, and the general character of the arrest and custodial interrogation were presented through the testimony of Detective Myers.

The trial judge concluded from the testimony of Detective Myers that McIntyre's waiver of his rights was voluntary. The trial judge did not make any factual findings as to McIntyre's "age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights." *Fare v. Michael C.*, 442 U.S. at 725, 99 S.Ct. at 2572, 61 L.Ed.2d at 212. Indeed, the majority opinion concedes this, at 623–625, but concludes that the trial judge "did determine with sufficient clarity that there was a knowing and voluntary waiver of constitutional rights [that] satisfied the preponderance of the evidence test." At 625. Of course, under an independent constitutional appraisal, "the record must demonstrate with unmistakable clarity that the trial court made the necessary factual findings to support its conclusion that the waiver was valid. . . ." At 623. It is, therefore, at this juncture that I must part company with the majority's totality analysis.

Our analysis in *Lodowski v. State*, 307 Md. 233, 513 A.2d 299 (1986) (*Lodowski II*) is instructive on the absolute necessity of an adequate record to engage in an independent constitutional appraisal of a waiver of constitutional rights. In *Lodowski II*, the validity of a *Miranda* waiver was challenged, and in our totality of the circumstances analysis, we found that "[a]t the suppression hearing . . . the judge made only one finding of fact—that Lodowski did not at any time request a lawyer." 307 Md. at 252, 513 A.2d at 309. We concluded that meager factual finding was not enough to illuminate the issue of voluntariness, and consequently reversed the defendant's conviction. We explained that a sufficient record to determine voluntariness under an independent constitutional appraisal requires that the trial judge "announce the necessary factual findings

and his determination of voluntariness based thereon." 307 Md. at 256, 513 A.2d at 311.

In the present case, at the close of the suppression hearing, the trial judge made the following statement: "Well, it seems to me from hearing the evidence that the statement was given voluntarily without any undue inducements, and that *Miranda* warnings were given...." It is self-evident that at most the only factual finding made by the trial judge was that *Miranda* warnings were given, and this fact is undisputed. What is also clear from this statement is that the trial judge reached a legal conclusion that the waiver was voluntary without making any of the necessary factual findings as to the juvenile's maturity, knowledge, intelligence, education, experience or capacity to comprehend both his constitutional rights, and any waiver of those rights. *See Fare* and *Lodowski II, supra.*

It is apparent that the trial judge made no specific factual findings on the issue of waiver; accordingly, there are no factual findings to which we need give deference. It is also apparent, in view of the lack of factual findings, that his legal conclusion as to voluntariness cannot withstand an independent constitutional review. While the Court acknowledges that the trial judge did not specifically consider the relevant criteria in evaluating a juvenile waiver of constitutional rights, it concludes that the trial judge properly found a valid waiver. In doing so, the Court offers a dangerously inconsistent analysis.

For example, it is correctly stated that "[Maryland] cases recognize the importance of parental involvement in a juvenile's decision to waive *Miranda* rights, and they consider this a factor in evaluating the validity of the juvenile's waiver." At 620. It is also correctly stated that the age of a juvenile and access to parents are very important factors in evaluating the validity of a waiver. Yet, the majority excuses the failure of the trial judge to consider these factors by rationalizing that the statements given by McIntyre were exculpatory, and that he failed to offer testimony at the suppression hearing.

This rationale is unpersuasive. Whether a defendant's statement is exculpatory or inculpatory is irrelevant to a *Miranda* inquiry; *Miranda* itself admonishes that

no distinction may be drawn between inculpatory statements and statements alleged to be merely "exculpatory." If a statement made were in fact truly exculpatory it would, of course, never be used by the prosecution.

*Miranda*, 384 U.S. 436, 477, 86 S.Ct. 1602, 1629, 16 L.Ed.2d 694, 725 (1966). It is also undisputed that the statement made by McIntyre aided the police in their investigation, and was used against him at trial. Further, the exculpatory nature of an admission has not traditionally been a factor in an independent constitutional appraisal of a voluntary waiver of rights.

Moreover, it is the State that bears the burden of establishing that the constitutional standard was met by a preponderance of the evidence, and it is, therefore, the State's obligation at a suppression hearing to build a record that, upon review, will reflect with "unmistakable clarity" that the waiver was voluntary. The defendant's election not to testify at a suppression hearing cannot operate as a penalty when the State fails to satisfy its burden or the trial judge fails to make adequate factual findings. *State v. Raithel*, 285 Md. 478, 487, 404 A.2d 264, 269 (1979).

This case is also factually inapposite to several of the cases cited by the majority for support. In *Miller v. State*, 251 Md. 362, 247 A.2d 530 (1968), the juvenile did not request to see a parent before waiving his constitutional rights. Moreover, the juvenile initiated an interview with the police for the purpose of making a confession. Here, it is not apparent from the record that McIntyre initiated or even encouraged a dialogue with police, and he did not waive his rights and offer a statement until after his requests to see his mother were denied.

Similarly, in *Bean v. State*, 234 Md. 432, 199 A.2d 773 (1964), there was no request to see a parent by the juvenile, and the Court specifically considered this fact, as well as

the juvenile's age and mental ability, in determining the voluntariness of the waiver and subsequent confession. In *Green v. State*, 236 Md. 334, 203 A.2d 870 (1964), the parent was notified of the juvenile's arrest, but declined to come to the police station. In upholding the validity of the juvenile's waiver and confession, the Court reasoned that there was no evidence that the police prevented family contact. In the instant case, the police not only prevented McIntyre from contacting his mother, but accomplished his arrest in a fashion that ensured his family would be unaware of his arrest. It should also be noted that *Bean* may be legally inapposite as well, because in that pre-*Miranda* case, the Court applied an abuse of discretion standard, rather than an independent constitutional appraisal, in determining whether the trial court properly concluded that the waiver and subsequent confession was voluntary.

The majority also relies heavily on selected aspects of *Fare v. Michael C.*. It is true that in the *Fare* totality of the circumstances analysis the Court did not perceive any special factors that would indicate the juvenile was unable to understand his actions or that improper interrogation tactics were used. The majority's reliance, however, is misplaced for in *Fare* the Court reached its conclusion with the aid of a fully developed record. The juvenile there was 16 years old with a long history of experience with the justice system. Here, no evidence was adduced by the State to establish McIntyre was experienced, sophisticated or even knowledgeable about the criminal justice system, and any conclusion concerning his capacity to understand and waive his constitutional rights is speculative.

Furthermore, under *Fare* the majority's analysis is deficient because the trial judge refused to take into account the age and experience of the juvenile in order to determine whether his requests for his mother were an invocation of the right to remain silent. Indeed, while *Fare* rejected the notion that a request for a probation officer was a *per se* invocation of *Miranda* rights, the Court did not foreclose

the possibility that under a totality analysis a juvenile's request for a parent may constitute an invocation of the right to remain silent. 442 U.S. at 725, 99 S.Ct. at 2572, 61 L.Ed.2d at 213. The majority acknowledges this and reasons that it is "implicit" from the record that the trial judge applied the totality test in determining that McIntyre's requests to see his mother were not an invocation of his right to remain silent. At 625. What is explicit from the record, however, is that the trial judge refused to consider the issue at all as evidenced by his statement at the close of the suppression hearing:

> I don't know of any right that a person has to have their mother present during the taking of any statement, and I don't believe it's reasonable or sensible for trial courts to be making new rules. . . .

Because the trial judge did not consider this issue at all, the majority's ability to engage in an appropriate totality analysis is irreparably impaired.

Just as the constitutional commands of *Miranda* cannot sink to a mere perfunctory recital, so the same must be expected of any independent constitutional appraisal of a voluntary waiver of constitutional rights by a juvenile. Because the majority has declined to apply the appropriate constitutional principles and has failed to afford appropriately vigorous analysis under the principles it does apply, I dissent. I would reverse the judgment below and remand for a new suppression hearing and a new trial. *Lodowski v. State*, 307 Md. at 256, 513 A.2d at 311.

Judge COLE has authorized me to state that he concurs with the views expressed herein.

ELDRIDGE, Judge, dissenting:

I fully concur in Parts II and IV of the dissenting opinion by Judge Adkins. For the reasons therein set forth, I would reverse.